UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
TIMOTHY HARRINGTON,

               Plaintiff,

                                <u>MEMORANDUM & ORDER</u>
     -against-                 17-CV-2343(JS)(ARL)

RANDALL CRATER, BLUEMAGICGAMING.COM,
and MYBIGCOIN.COM,

               Defendants.
-----------------------------------X
APPEARANCES
For Plaintiff:       David Thomas Shivas, Esq.
                     Bell, Shivas & Fasolo, P.C.
                     150 Mineral Springs Drive, P.O. Box 220
                     Rockaway, New Jersey 07866

For Defendants:      Raymond Chandler, Esq.
                     Chandler & Jennings, LLC
                     8 South Brooks Street, P.O. Box 10
                     Manning, South Carolina 29102

SEYBERT, District Judge:

       Before this Court is Plaintiff Timothy Harrington's ("Plaintiff") motion for default judgment against Randall Crater ("Crater"), BlueMagicGaming.com, and MyBigCoin.com (together with Crater, "Defendants"). (Mot., ECF No. 53; Pl. Br., ECF No. 53-1; Reply, ECF No. 57.) Defendants oppose the motion and ask the Court to stay this action pending resolution of a civil action brought against Crater by the Commodity Futures Trading Commission ("CFTC"), and a pending criminal action brought against Crater by the Department of Justice ("DOJ"). (Defs. Opp., ECF No. 56.) For the reasons that follow, Plaintiff's motion is DENIED without

prejudice and Defendants' request for a stay is GRANTED.  Plaintiff may seek leave to lift the stay upon resolution of the CFTC and DOJ actions, as described herein.

## FACTUAL BACKGROUND

"The law requires a court to accept as true a plaintiff's factual proffer when uncontested by a defaulting defendant." Stark Carpet Corp. v. Stark Carpet & Flooring Installations, Corp., 954 F. Supp. 2d 145, 151 (E.D.N.Y. 2013) (citing Priestley v. Headminder, Inc., 647 F.3d 497, 504 (2d Cir. 2011); Finkel v. Romanowicz, 577 F.3d 79, 83 n.6 (2d Cir. 2009)).

On December 17, 2013, Plaintiff and Crater entered into a partnership agreement "to own, operate and manage BlueMagicGaming.com and Mybigcoin.com" under the name Greyshore Website Management Company (the "Partnership").  (Pl. Br. at 3; Partnership Agmt., Harrington Aff., Ex. A, ECF No. 53-5, at ECF p. 13.)  The Partnership was formed to create and market a virtual currency called MyBigCoins ("MBCs") through the MyBigCoin.com website.  (Pl. Br. at 3-4; Harrington Aff., ECF No. 53-5, ¶ 11.) To fund the development of the website, Plaintiff made an initial contribution of $50,000, as anticipated under the Partnership Agreement.  (Pl. Br. at 3; Partnership Agmt. at ECF p. 14.) Pursuant to a hand-written revision to the Partnership Agreement, Plaintiff made a subsequent $20,000 contribution to the Partnership in the form of a cash payment to Crater and also agreed

to pay $200,000 to retain a third-party consultant, Robert McGowan, to develop technology for the Partnership. (Id.) Plaintiff describes his envisioned role in the Partnership as "provid[ing] the technology in support of the MyBigCoin platform." (Harrington Aff. ¶ 11.) Crater on the other hand operated the business side of the Partnership from its offices in East Hampton, New York. (Pl. Br. at 4; Harrington Aff. ¶¶ 13-14.)

According to the Partnership Agreement, Plaintiff and Crater were to share in the profits on the sale of MBCs on a 50/50 basis. (Partnership Agmt. at ECF p. 14.) The Partnership collected a 5% fee on the sale of each MBC, meaning Plaintiff was entitled to 2.5% of the total sales. (Pl. Br. at 4; Harrington Aff. ¶ 17.) As documented in the bank records and account ledgers produced in this litigation, more than 200,000 MBCs were sold to buyers, resulting in more than $6 million in revenue. (Pl. Br. 4-5; Account Ledger, Harrington Aff., Ex. B, ECF No. 53-5.[1])

Crater held on to these profits, refusing to make a distribution to Plaintiff or grant Plaintiff's requests to access the Partnership's books and records, as was required under the Partnership Agreement. (Partnership Agmt. at ECF p. 15.) Crater did, however, transfer the profits to accounts he maintained, including a Wells Fargo account held by "Kimberly Renee Benge doing

---

[1] The Account Ledger was filed under seal to protect purchaser information.

3

business as Greyshore Advertiset", and a Bank of America account held by "Greyshore, LLC". (Pl. Br. 4-5, 8; Bank Accounts, Harrington Aff., Ex. D, ECF No. 53-5.[2]) Plaintiff claims he had no involvement with these accounts. (Pl. Br. at 8.)

In August 2014, Crater paid Plaintiff $45,000 as a partial return of Plaintiff's cash contribution. (Id. at 7.) According to Plaintiff, this is the only payment he received from Crater. In or around 2017, Crater took the position that the Partnership had been dissolved, even though there had been no formal windup as required under the Partnership Agreement. (Id.; Partnership Agmt. at ECF p. 16.) According to Plaintiff, around this time he "learned that defendant Crater had established a new company in another state that had been using the MyBigCoin.com website to generate sales of MBCs." (Pl. Br. at 7.) Plaintiff maintains that he "has never engaged in any other business with defendant Crater and he never had a role in MyBigCoinPay," which is now the subject of a pending CFTC civil action and DOJ criminal action, as described infra. (Id.)

PROCEDURAL BACKGROUND

I.   The Present Action

On April 21, 2017, Plaintiff initiated this action, alleging violations of New York state law for breach of contract,

---

[2] The Bank Accounts were filed under seal to protect purchaser information.

unjust enrichment, civil fraud, conversion, and violation of the New York Partnership Law. (See generally Compl., ECF No. 1.) Plaintiff also sought, and was granted, a preliminary injunction and temporary restraining order that restrained Defendants from transferring Partnership assets and directed Defendants to produce the Partnership's books and records. (Apr. 28, 2017 Order, ECF No. 11.) On October 7, 2017, the Honorable Arthur D. Spatt granted in part and denied in part Defendants' motion to dismiss. (Oct. 7, 2017 Order, ECF No. 23.) Specifically, Judge Spatt rejected Defendants' arguments grounded in improper venue and lack of jurisdiction, but he dismissed without prejudice and with leave to renew Plaintiff's New York Partnership Law claims because they required an accounting, which had not yet been performed. (Id.) Subsequently, Defendants filed their answer and counterclaims, and the parties commenced discovery.

On October 3, 2018, Judge Spatt granted Defendants' counsel's motion to withdraw and stayed the matter to afford Defendants time to secure substitute counsel.[3] This Court granted Defendants several extensions to retain substitute counsel, but after Crater failed to appear at two consecutive status conferences before Magistrate Judge Arlene R. Lindsay in January 2019, Judge Lindsay recommended that the Court strike Defendants' answer.

---

[3] The matter was reassigned to the undersigned on December 3, 2018.

(Jan. 22, 2019 Report & Recommendation ("R&R"), ECF No. 41.)   The Court adopted Judge Lindsay's R&R in its entirety, and Defendants' answer was stricken.  (Feb. 19, 2019 Elec. Order.)

On March 21, 2019, the Clerk of the Court entered a notice of default against Defendants.  Before Plaintiff filed his motion for default judgment, however, substitute counsel for Defendants filed a notice of appearance and indicated that Defendants would seek a stay of this action pending resolution of CFTC and DOJ actions against Crater. (See Def. Ltr., ECF No. 50.) As a result, Plaintiff's motion for default judgment and Defendants' opposition are now before the Court.

## II.  The CFTC Action

On January 16, 2018 -- almost eight months after Plaintiff initiated the present action -- the CFTC initiated a civil action in the United States District Court for the District of Massachusetts against Crater, and several other individuals, alleging an MBC virtual currency scheme.  See Commodities Futures Trading Commission v. My Big Coin Pay, Inc. (the "CFTC Action"), No. 18-CV-10077 (D. Mass.).[4]  According to the Amended Complaint, filed on April 20, 2018, the CFTC alleges that Crater, Mark

---

[4] The Court may take judicial notice of publicly filed pleadings in other lawsuits. See Rothstein v. Balboa Ins. Co., No. 14-CV-1112, 2014 WL 4179879, at *1 (2d Cir. June 25, 2014) (citing Rothman v. Gregor, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of another complaint "as a public record")).

Gillespie, John Roche, Michal Kruger, My Big Coin Pay, Inc., and My Big Coin, Inc. (the "CFTC Defendants") made false and misleading claims and omissions about MBCs to attract buyers.   CFTC Action, Am. Compl., ECF No. 63.   Specifically, the CFTC alleges that, from January 2014 through February 2018, the CFTC Defendants solicited buyers through false and misleading statements or omissions about "MBC's active trading status, rising prices, and the currency's merits," including statements that MBCs were backed by gold and could be used anywhere MasterCard was accepted.   Id. ¶¶ 31-34, 39. These allegedly false and misleading statements were made "via the MBC Inc. website, other websites associated with the [CFTC] Defendants," and through press releases, YouTube and other social media platforms.   Id. ¶ 32 (emphasis added); see also id. ¶ 59 (reiterating that the CFTC Defendants made false and misleading representations and omissions on "other websites associated with [the CFTC] Defendants").   In connection with the alleged scheme, the CFTC Defendants allegedly "received in excess of $6 million from at least twenty-eight MBC Customers."   Id. ¶ 60.   The CFTC further alleges that these proceeds were transferred into bank accounts controlled by or operated for the benefit of the CFTC Defendants, including a bank account in the name of "Kimberly Renee Benge d/b/a Greyshore Advertiset", and "Greyshore LLC", among others.   Id. ¶¶ 61-66.

The CFTC seeks injunctive relief and civil monetary penalties, including disgorgement, arising out of the CFTC Defendants' allegedly fraudulent conduct in violation of Section 6(c)(1) of the Commodities Exchange Act, 7 U.S.C. § 9(1), and Rule 180.1(a), 17 C.F.R. § 180.1(a). Id. ¶ 5. Moreover, the District Court granted the CFTC's request for a preliminary injunction and imposed an asset freeze on the CFTC Defendants that remains in place today. CFTC Action, Apr. 5, 2018 Order, ECF No. 57, ¶¶ 4-7. The District Court also denied the CFTC Defendants' motion to dismiss the Amended Complaint. CFTC Action, Sept. 26, 2018 Order, ECF No. 106.

III. The DOJ Criminal Action

On February 26, 2019, a grand jury sitting in the District of Massachusetts returned a seven-count indictment that charged Crater with wire fraud and unlawful monetary transactions. United States v. Crater ("Criminal Action"), No. 19-CR-10063 (D. Mass.). The DOJ filed a motion to intervene in the CFTC Action for the limited purpose of seeking a stay, and the District Court granted the stay. CFTC Action, Mar. 8, 2019 Stay Order, ECF No. 147. The allegations contained in the Indictment substantially overlap with the allegations contained in the CFTC Action's Amended Complaint. Specifically, the DOJ alleges that Crater misappropriated more than $6 million from investors through the sale of MBCs by making false claims that MBCs were "backed by gold

8

or other assets, and could be traded on a virtual currency exchange." Criminal Action, Indictment, ECF No. 1, ¶¶ 7, 9. Moreover, the Indictment identifies a Wells Fargo account ending in -5976, the same account identified by Plaintiff here, as an account Crater allegedly used to deposit unlawful proceeds from the MBC scheme. (Id. ¶¶ 22, 24; see, e.g., Bank Accounts, discussed supra.) Trial is scheduled to begin on September 13, 2021.

MOTION TO STAY

I. Legal Standard

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 96 (2d Cir. 2012) (quoting Landis v. N. Am. Co., 299 U.S. 248, 254 (1936)). Where a defendant in a civil action is subject to an overlapping criminal proceeding, courts consider the following factors in deciding whether a stay of the civil proceeding is warranted:

> (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the case, including whether the defendants have been indicted; (3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests of and burden on the defendants; (5) the

interests of the courts; (6) the public
interest.

Id. at 99 (citation omitted).  In the final analysis, the district
court's decision must rest upon "a particularized inquiry into the
circumstances of, and the competing interests in, the case."  Id.
(quotation omitted).

## II.  Application

The Court has considered the foregoing factors and
concludes that they weigh in favor of granting a stay.

### A.   Overlap in Proceedings

"[T]he strongest case for deferring civil proceedings
until after completion of criminal proceedings is where a party
under indictment for a serious offense is required to defend a
civil or administrative action involving the same matter."  SEC v.
CKB168 Holdings, Ltd., No. 13-CV-5584, 2016 WL 11472222, at *2
(E.D.N.Y. Jan. 6, 2016) (alteration in original) (quoting SEC v.
Dresser Indus., Inc., 628 F.2d, 1368, 1375-76 (D.D.C. 1980)).
Indeed, courts in this Circuit recognize the degree to which the
civil and criminal issues overlap as a "particularly significant
factor."  SEC v. Platinum Mgmt. (NY) LLC, No. 16-CV-6848, 2017 WL
2915365, at *4 (E.D.N.Y. July 7, 2017) (collecting cases); Milton
Pollack, Parallel Civil and Criminal Proceedings, 129 F.R.D. 201,
203 (1990) ("The most important factor at the threshold is the
degree to which the civil issues overlap with the criminal

10

issues."). The significance comes out of a concern for self-incrimination, because "[a] defendant in a civil proceeding who invokes the Fifth Amendment as a result of an overlapping criminal investigation or proceeding 'risks the adverse inference arising from his or her assertion of the privilege.'" Louis Vuitton, 676 F.3d at 97-98 (alteration omitted) (quoting Baxter v. Palmigiano, 425 U.S. 308, 318 (1976)). If the civil defendant elects not to assert the Fifth Amendment privilege and fully cooperates in discovery, on the other hand, the defendant's testimony may constitute admission of criminal conduct in his criminal prosecution. Id. at 97. Thus, "[w]here there is overlap, there is a greater concern about self-incrimination. By contrast, if 'there is no overlap, there would be no danger of self-incrimination and accordingly no need for a stay.'" Platinum Mgmt. (NY) LLC, 2017 WL 2915365, at *4 (quoting Trustees of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech. Inc., 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995)).

Reading the CFTC Amended Complaint, DOJ Indictment, and Plaintiff's Complaint together reveals substantial overlap among the three cases. These three cases all relate to Crater's My Big Coin virtual currency enterprise. In furtherance of that enterprise, the CFTC and DOJ allege Crater and his co-conspirators used various websites to communicate the allegedly false and misleading statements about MBCs. Similarly, the Partnership

between Plaintiff and Crater at the heart of the present dispute was formed to operate websites to market MBCs and process MBC purchases.   While the BlueMagicGaming.com and MyBigCoin.com websites are not explicitly named in the CFTC Amended Complaint or DOJ Indictment, those documents refer to unidentified "other websites" that Crater and his co-conspirators used to broadcast statements about MBCs.   Moreover, although Plaintiff denies knowledge of the various other entities Crater formed to market and sell MBCs, the fact that Plaintiff, the CFTC, and the DOJ all quantify the allegedly fraudulent proceeds from the enterprise at more than $6 million shows that there is no distinction between the MBC enterprise alleged by the CFTC and DOJ and the MBC operation at issue here.   In fact, all three actions identify the same bank accounts into which Crater allegedly transferred ill-gotten gains from MBC sales -- the Wells Fargo and Bank of America accounts identified <u>supra</u>.   In short, Plaintiff, the CFTC, and the DOJ are pursuing the same pot of money, located in the same bank accounts, and based on the same set of facts: an allegedly fraudulent virtual currency enterprise.

At most, the Plaintiff's action and the <u>CFTC Action</u> and <u>Criminal Action</u> involve different victims.   But the fact that Plaintiff may have been victimized by the scheme in a different way than the victims in the CFTC and DOJ actions does not alter the Court's finding as to this factor.   See <u>Parker v. Dawson</u>, No.

06-CV-6191, 2007 WL 2462677, at *4 (E.D.N.Y. Aug 27, 2007) ("[B]ecause the wrongful conduct alleged in the civil actions is a subset of that alleged in the criminal action, this factor strongly weighs in favor of a stay."); see also Citibank, N.A. v. Super Sayin' Pub., LLC, 86 F. Supp. 3d 244, 247 (S.D.N.Y. 2015) (noting "some differences" between the civil and criminal cases but nonetheless concluding that the actions overlap).

Further, here, there is a concern about self-incrimination, because Crater could be asked to testify in connection with an evidentiary hearing as to Plaintiff's claimed damages. "When [a] defendant contests the amount of the claim, a full hearing may be required on the issue of damages, since a default does not concede the amount demanded." Court's Entry of a Default Judgment -- Hearings, 10A FED. PRAC. & PROC. CIV. § 2688 (4th ed. 2020); Bd. of Trustees of the UFCW Loc. 174 Pension Fund v. Karl Ehmer Delicatessen, No. 10-CV-3188, 2011 WL 4382862, at *1 (E.D.N.Y. Aug. 8, 2011) (citing FED. R. CIV. PROC. 55(b)(2)), Report and Recommendation Adopted, No. 10-CV-3188, 2011 WL 4382515 (E.D.N.Y. Sept. 20, 2011). Here, Defendants contest Plaintiff's claim for $200,000 in damages for consulting fees he paid pursuant to the Partnership Agreement. (Defs. Opp. at 4.) As a result, Crater may be asked to testify regarding these fees, which were intended to improve a website potentially involved in the MBC enterprise at issue in the CFTC Action and the Criminal Action.

13

Thus, even at the default judgment stage, Crater's Fifth Amendment protections are implicated.

In sum, the <u>CFTC Action</u> and <u>Criminal Action</u> substantially overlap with this action, potentially raising self-incrimination concerns and making a strong case for staying this action until the <u>CFTC Action</u> and <u>Criminal Action</u> have concluded.

### B.  Status of the Case

"Whether the defendant has been indicted has been described as 'the most important factor' to be considered in the balance of factors." <u>Doe v. Indyke</u>, No. 20-CV-0484, 2020 WL 5518384, at *3 (S.D.N.Y. Sept. 14, 2020) (alteration omitted) (citing cases). "A stay of a civil case is most appropriate where a party to the civil case has already been indicted for the same conduct," because an indictment increases the likelihood of self-incrimination issues and reduces the risk to the plaintiff of prejudicial delay. <u>Trustees of Plumbers & Pipefitters Nat'l Pension Fund</u>, 886 F. Supp. at 1139; <u>see also</u> <u>In re Par Pharmaceutical, Inc.</u>, 133 F.R.D. 12, 13 (S.D.N.Y. 1990). Here, Crater has been indicted, so this factor weighs in favor of a stay.

### C.  The Private and Public Interests

A particularized inquiry into the competing interests at stake here makes it clear that a stay is warranted in this case. First, it is true that "[t]he interests of Plaintiffs in proceeding expeditiously, including the prejudice to Plaintiffs caused by

delay, support denial of a stay." Bernard v. Lombardo, No. 16-CV-863, 2017 WL 2984022, at *3 (S.D.N.Y. June 9, 2017) (citing cases). The Court appreciates that a stay will delay resolution of Plaintiff's civil suit, especially given the issues related to conducting criminal trials during the COVID-19 pandemic and the backlog of criminal cases throughout the country. But Plaintiff's interests are trumped by Crater's interests, described supra. "This is particularly true where the subject matter of both cases overlaps to a significant degree and the Criminal Case is expected to be resolved by the end of this year." Trustees of Plumbers & Pipefitters Nat'l Pension Fund, 886 F. Supp. at 1140. Indeed, the Criminal Action is scheduled to begin trial on September 13, 2021 -- less than six months away -- and the parties were nearing completion of discovery in the CFTC Action at the time it was stayed. Criminal Action, ECF No. 96; CFTC Action, ECF No. 142.

Moreover, judicial efficiency favors granting a stay, because Crater has been indicted and will face trial within six months. In fact, resolution of the Criminal Action and CFTC Action will likely give the Court greater clarity regarding Plaintiff's request for a default judgment that, if successful, would grant him rights to MBCs proceeds that both the DOJ and the CFTC allege were obtained through unlawful conduct. Last, "[b]ecause of the overlapping issues in the criminal and civil cases, the criminal prosecution will serve to advance the public interests at stake

here." <u>Trustees of Plumbers & Pipefitters Nat'l Pension Fund</u>, 886
F. Supp. at 1140.

<u>CONCLUSION</u>

For the reasons stated herein, Plaintiff's motion for
default judgment is DENIED without prejudice, and Defendant's
request for a stay is GRANTED.  Plaintiff may seek leave to lift
the stay and renew its request for default judgment upon resolution
of the <u>CFTC Action</u> and <u>Criminal Action</u>.


SO ORDERED.


/s/ JOANNA SEYBERT _____
Joanna Seybert, U.S.D.J.

Dated: March _22_, 2021
       Central Islip, New York



16